UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PROBADO TECHNOLOGIES CORPORATION, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-349 |
| | § | |
| SMARTNET, INC., | § § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Defendant's 12(b)(6) Motion to Dismiss. (D.E. 26.) For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

**I.    Jurisdiction**

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff Probado Technologies Corp. ("Probado"), a Texas corporation with its principal place of business in Texas, and Defendant Smartnet, Inc. ("Smartnet"), a Delaware corporation with its principal place of business in Maryland. (D.E. 23, pp. 1-2.)

**II.    Factual & Procedural Background**

On December 21, 2009, Probado filed suit against Smartnet in this Court alleging diversity jurisdiction.  (D.E. 1.)  Plaintiff filed its First Amended Complaint ("Complaint") on February 26, 2010.  (D.E. 23.)  In its Complaint, Plaintiff alleges that Smartnet and Probado "entered into a teaming agreement to pool their resources and pursue the acquisition of government contracts." (D.E. 23, p. 2.)  Specifically, Plaintiff alleges the parties were pursuing contracts with the Chief of Naval Air Training Command ("CNATRA") by submitting bids in

response to Requests for Quotes ("RFQ"). (Id.) Plaintiff alleges that the parties agreed in the teaming agreement that Smartnet would be the prime contractor and Probado would be the subcontractor because of specific prime contractor bidder requirements by CNATRA. (Id.) Plaintiff alleges that this agreement was made both orally and in writing. (Id. at 7-8.) The written teaming agreement ("Written 2007 Agreement") was entered into on September 2007 "to formalize in writing [the] working relationship" between Probado and Smartnet. (D.E. 23, pp. 2-3; D.E. 23, Exh. 1; D.E. 26, p. 3.) Plaintiff contends that certain terms were "edited to be nonspecific" to be filled in by later agreements depending on what government contracts were being sought. (D.E. 23, pp. 2-3) Plaintiff also alleges that the Written 2007 Agreement had a "clerical error, missed by both parties" which named Probado as the Prime Contractor instead of leaving that term blank. (Id.)

Plaintiff alleges that Probado and Smartnet agreed to work together on a RFQ that was issued on August 28, 2007 by CNATRA. (Id. at 3.) Smartnet submitted a proposal to CNATRA on September 7, 2007 in response to the RFQ. (Id. at 5.) However, the award initially went to Ultimate Solutions, Inc. ("USI"). (Id.) Smartnet filed a protest of this award on October 2, 2007 and submitted new proposals on January 2, 2008 and again on March 17, 2008. (Id. at 6.) Each proposal named Probado as the subcontractor. (D.E. 23, pp. 5-6; D.E. 23, Exh. 2-6.) The final proposal was successful, defeating all other protests, and Smartnet was awarded the CNATRA contract. (D.E. 23, p. 6.) Probado claims that even though in early October 2008 both "parties were poised and ready to begin working on the government award, . . . two days before work under the contracts was to begin, Smartnet suddenly, and without justification, notified Probado that Smartnet would not be honoring their agreement and would not be using Probado as its subcontractor on these projects." (Id. at 6-7.) Plaintiff's Complaint alleges that this caused a

breach of written, oral, and implied contracts. (Id. at 7-9.) If a valid contract does not exist, Plaintiff alternatively seeks recovery under the theory of promissory estoppel. (Id. at 9-10.) Smartnet filed this Motion to Dismiss seeking dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) alleging that Plaintiff has failed to plead any valid cause of action. (D.E. 26.)

Smartnet's arguments for dismissing this case can be separated into two categories. (D.E. 26, pp. 1-14.) First, Smartnet argues that Plaintiff's Complaint fails to plead an enforceable teaming agreement requiring Smartnet to subcontract with Probado. (Id.) Defendant argues this failure is a result of: (a) missing or inconsistent terms in the teaming agreement, (b) the automatic termination of the teaming agreement on its own terms, and (c) failure of the Plaintiff to properly plead that all conditions precedent have been fulfilled. (Id.) Second, Smartnet argues that Plaintiff's Complaint does not plead a valid claim for promissory estoppel. (Id. at 10.) Defendant argues the promissory estoppel claim fails because: (a) equitable remedies are inappropriate when there is a valid contract; and (b) the promise plaintiff seeks to enforce is a mere statement of hope. (Id.) Each of these arguments is discussed below.

### III. Discussion

#### A. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Conversely, 'when the allegations in a

complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Cuvillier, 503 F.3d at 401 (citing Twombly, 550 U.S. 558 (internal citations and quotations omitted)). In deciding a motion to dismiss "[w]e must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff." Cent. Laborers' Pension Fund v. Integrated Elec. Servs., 497 F.3d 546, 550 (5th Cir. 2007) (citing Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005)); see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940-41 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "Nevertheless, '[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" Cent. Laborers' Pension Fund, 497 F.3d at 550.

### B. Teaming Agreements Generally

In this section, this Court reviews general requirements of valid teaming agreements and then considers whether Plaintiff has pled an enforceable teaming agreement that would require Smartnet to subcontract with Probado. Government contract teaming agreements are defined in the Federal Acquisition Regulations ("FAR") which "set[s] forth standards for government contracts." Strayhorn v. Raytheon E-Systems, 101 S.W.3d 558, 563 (Tex. App. 2003); see 48 C.F.R. § 9.601. A teaming agreement under the FAR occurs when "[a] potential prime contractor agrees with one or more other companies to have them act as its subcontractors under a specified Government contract or acquisition program."[1] 48 C.F.R. § 9.601. Thus, two

---

[1] "The federal government defines a 'contractor team arrangement' as an arrangement between 'a potential prime contractor' and one or more subcontractors." Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc., 214 F.3d 1030, 1034 (9th Cir. 2000). "An American Bar Association handbook on government contracting speaks of teaming arrangements as 'primarily' including agreements 'under which the signatories cooperate to pursue a particular

material terms in a FAR teaming agreement are: (1) an agreement between one or more companies to pursue a government contract and (2) an agreement to pursue a specific government contract. Id. Courts have found that a valid teaming agreement must allege both of these elements. See, e.g., Cable & Computer Tech., 214 F.3d at 1035 (finding contract is formed if parties exchange promises "to be a team" with one another and "as a team submit a bid" for a government contract).

Defendant argues Probado has failed to plead the existence of an enforceable teaming agreement which would obligate Smartnet to subcontract Probado's services. (D.E. 26, pp. 1-10.) Specifically, Defendant argues it is not obligated to subcontract work to Probado because: (1) the teaming agreement is missing material terms, (2) the teaming agreement expired on its own terms, and (3) Plaintiff has failed to plead that the teaming agreement's conditions precedents have been met. (D.E. 26.) This section addresses these three arguments below.

### 1. **Plaintiff Alleges a Teaming Agreement with All Material Terms**

Defendant Smartnet argues that Plaintiff has failed to plead an enforceable teaming agreement because Plaintiff does not specify the government contract which parties intended to pursue. (D.E. 26, p. 7.) This Court disagrees and finds that Probado has successfully alleged an enforceable teaming agreement contract. To defeat a 12(b)(6) motion, Plaintiff does not need to plead "detailed factual allegations." Twombly, 550 U.S. at 555. Plaintiff only needs to plead enough facts that "raise a right to relief above the speculative level." Id.

In its Complaint, Probado alleges that Smartnet agreed to work together with Probado on a "response to upcoming Requests for Quotes" for a contract with CNATRA. (D.E. 23, p. 2.) The Complaint specifically states that the government contract the parties agreed to pursue was

---

contract'; such agreements generally 'anticipate the entry into a separate subcontract or joint venture upon the award of a contract.'" Id. at 1034-1035.

the August 28, 2007 RFQ. (Id. at 3.) Plaintiff alleges that both companies promised to "work exclusively with the other and not pursue teaming arrangements with other, possibly competing, companies." (Id. at 2.) Plaintiff alleges that if Smartnet won the contract, the parties agreed "Smartnet would be the Prime Contractor and that Probado would be the subcontractor." (Id. at 3.) Thus, the Complaint alleges the two material components of a teaming agreement under FAR, specifically that the parties agreed to work together on a specific government contract. See 48 C.F.R. 9.601, Definition, FAR; Cable & Computer Tech., 214 F.3d at 1035.

In addition to alleging a valid FAR agreement, the Complaint also alleges that both companies labored together pursuant to the teaming agreement to present a bid to win the CNATRA contract. (D.E. 23, pp. 5-7.) Indeed, when the CNATRA contract proposals were submitted, they "expressly stated that Smartnet has teamed with Probado for this project and that both Smartnet and Probado will be performing work under the contracts if awarded." (Id. at 5.) Thus, the proposals attached to Plaintiff's Complaint are further evidence that Smartnet and Probado entered a teaming agreement. (D.E. 23, Exhs. 2-6.) This Court finds that Probado's allegations are sufficient to "raise a claim of entitlement to relief" that parties entered into a teaming agreement where Smartnet was obligated to subcontract with Probado. See Twombly, 550 U.S. at 555. Defendant's arguments to the contrary are without merit. The Court considers each of them in turn below.

### a. Teaming Agreements Do Not Need to be in Writing

Defendant contends that each of Plaintiff's "cause[s] of action stems from the same alleged promises and obligations of the parties memorialized in the [written] Teaming Agreement" signed by both parties in September 2007. (D.E. 26, p. 2.) Defendant argues that because the Written 2007 Agreement does not specify the government contract parties sought to

pursue, the teaming agreement is unenforceable. (D.E. 26, p. 7.) Defendant is correct that a failure to specify the government contract in a teaming agreement would make that agreement unenforceable. However, a FAR teaming agreement does not need to be a written agreement, and this Court may look beyond the Written 2007 Agreement to find agreed upon material terms. See Wise Bus. Servs. v. Incisive Info, Inc., 2009 Tex. App. LEXIS 2580 (Tex. App. Dallas Apr. 15, 2009) (determining whether oral agreement required defendant to subcontract work to plaintiff after defendant won its bid with the United States Department of Agriculture); see also Cable & Computer Tech., 214 F.3d at 1035-36 (finding Plaintiff can seek to enforce an oral agreement to team with Defendant on contract bid to upgrade the computer system on a B-1B bomber); Quandry Solutions, Inc. v. VeriFone, Inc., 2009 U.S. Dist. LEXIS 31459, *23-24 (E.D. Pa. Apr. 13, 2009) (determining on summary judgment whether parties entered an oral teaming agreement under the FAR); Aydin Corp. v. Aero. Corp., 1986 U.S. Dist. LEXIS 17708 (E.D. Pa. Nov. 14, 1986) (finding insufficient evidence of an oral contract for a teaming agreement to support a preliminary injunction).

Plaintiff's Complaint alleges that the agreements to work together to pursue the CNATRA contract were made not only in writing, but also orally and through the implied actions of both parties. (D.E. 23, pp. 7-10.) Plaintiff only needs to plead some facts which would provide grounds for relief. See Twombly, 550 U.S. at 555. Plaintiff's Complaint alleges parties agreed to work exclusively together to pursue a contract with CNATRA. (D.E. 23, pp. 1-3.) These well-pleaded facts must be construed as true. See Iqbal, 129 S. Ct. at 1401-02. Thus, this Court finds that because a teaming agreement does not need to be a written agreement, Plaintiff's Complaint sufficiently alleges an enforceable teaming agreement.

      b. **Parol Evidence and the Written 2007 Agreement's Integration Clause**

  Defendant next argues that the integration clause of the Written 2007 Agreement prohibits Plaintiff from relying on any outside agreements to support its breach of contract claims. (D.E. 26, p. 5 ("The integration clause in the [Written 2007] Teaming Agreement prohibits Probado from seeking to prove that there are any enforceable promises or agreements ([w]ritten, oral, or otherwise) outside the Teaming Agreement.").) The integration clause states that the Written 2007 Agreement is "the entire Agreement of the Parties hereto" and that any modifications of the agreement must be made "in writing and duly signed by the respective Parties." (D.E. 23, Exh. 1, p. 10.) Defendant argues because the Written 2007 Agreement has an integration clause and is missing material terms, there is no enforceable teaming agreement. (D.E. 26, p. 5.) This Court disagrees.

  "The reason for placing a 'notice of final agreement' or merger clause in a written contract is to invoke the parol evidence rule which excludes proof of extrinsic agreements." Burleson State Bank v. Plunkett, 27 S.W.3d 605, 615 (Tex. App. Waco 2000). "When, as here, a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence." ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., 234 S.W.3d 711, 719 (Tex. App. Eastland 2007) (citing Barker v. Roelke, 105 S.W.3d 75, 83 (Tex. App. Eastland 2003)). "This rule, however, is not without exception." Id. Under Texas law, an integration clause does not prohibit parol evidence of enforceable promises or agreements outside the written contract if they (1) are collateral agreements not fully integrated into the contract, (2) are used to interpret a mistaken or ambiguous term of the contract, or (3) are agreements made after the contract was signed. Id. at

719-20. As discussed below, this Court finds that Plaintiff's Complaint sufficiently pleads a valid teaming agreements that is not barred by the integration clause.

         c. **The Pleadings Sufficiently Allege that Parol Evidence May Be Used In This Case.**

"An agreement is integrated if the parties intended a writing to be a final and complete expression of agreed terms." Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Southeast Tex., 249 S.W.3d 480, 486 (Tex. App. Beaumont 2008) (citing ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., 234 S.W.3d 711, 719 n.10 (Tex. App. Eastland 2007)). "A fully integrated written agreement is a final and complete expression of all the terms agreed upon by the parties. A partially integrated agreement is a final and complete expression of all the terms addressed in that written agreement, but is not a final and complete expression of all the terms the parties have agreed upon." Id. (citing ISG State Operations, 234 S.W.3d at 710).

"The inclusion of a merger or integration clause does not conclusively establish the written contract is fully integrated." Id. (citing Bob Robertson, Inc. v. Webster, 679 S.W.2d 683, 688-89 (Tex. App. Houston 1984)). If, for example, the contract contains missing material terms, that contract is not fully integrated. Id. (finding that a contract with a merger clause but missing delivery terms is not fully integrated). A court may thus consider evidence outside the written agreement to "explain or supplement the terms" missing in the original agreement. Id.

In this case, numerous terms of the Written 2007 Agreement were left blank or simply state "TBD." (D.E. 23, Exh. 1.) Plaintiff alleges parties intended certain terms to be "nonspecific" so that the agreement could be used as a template for future contracts. (D.E. 23, p. 3.) At this stage, it is sufficient to conclude that Plaintiff alleges that the Written 2007

Agreement is not a fully integrated agreement and that parol evidence may be used to fill in missing terms.[2] See Twombly, 550 U.S. at 555. (D.E. 23.)

Next, Defendant argues that because the Written 2007 Agreement states Smartnet is the subcontractor and Probado is the prime contractor, Smartnet has no obligation to subcontract work to Probado under the teaming agreement. (D.E. 26, pp. 12-13.) Plaintiff alleges that this was a mistake "due to clerical error, missed by both parties." (D.E. 23, p. 3.) A court may disregard an integration clause and look to prior agreements if there is evidence of "ambiguity, fraud, or accident" in the written contract. Id. at 719-20 ("A merger clause can be disregarded upon pleading and proof of ambiguity, fraud, or accident." (citing Fish v. Tandy Corp., 948 S.W.2d 886, 898 (Tex. App. Fort Worth 1997)); Criswell v. European Crossroads Shopping Center, Ltd., 792 S.W.2d 945, 951 (Tex. 1990) (finding that courts may disregard an integration clause and find "ambiguity in agreements where it had not been pleaded."). Probado notes that Smartnet's own proposals to CNATRA which list Probado as the subcontractor is evidence of the mistake. (D.E. 23, Exh. 2-6.) This Court finds that the Plaintiff has sufficiently pled a mistake in the Written 2007 Agreement and that Smartnet may still be held liable under the teaming agreement for failure to subcontract work to Plaintiff.

Finally, Defendant's argument that Plaintiff cannot use evidence of oral agreements after the Written 2007 Agreement is also flawed. Under Texas law, a no-oral modification provision does not prevent enforcement of subsequent oral agreements, even if those agreements modify the

---

[2] When a court finds that a contract is not fully integrated, parol evidence is often used to explain or supplement the missing terms. See Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Southeast Tex., 249 S.W.3d 480, 488 (Tex. App. Beaumont 2008) (finding when terms are missing or absent or ambiguous, a court may "consider evidence of consistent additional terms to explain or supplement the terms of the written agreement"); ISG State Operations, Inc. v. Nat'l Heritage Ins. Co., 234 S.W.3d 711, 719-20 (Tex. App. Eastland 2007) (finding an integration clause does not prohibited courts from considering "evidence of a collateral agreement.") (citing Ledig v. Duke Energy Corp., 193 S.W.3d 167, 179 n.10 (Tex. App. Houston 2006)). When a contract is not fully integrated, "[a] court considers the surrounding circumstances in determining whether, and to what degree, an agreement is integrated." Morgan Bldgs. & Spas, 249 S.W.3d at 486.

original contract.³ Am. Garment Props. v. CB Richard Ellis-El Paso, L.L.C., 155 S.W.3d 431, 435 (Tex. App. El Paso 2004) ("A written contract not required by law to be in writing may be modified by a subsequent oral agreement even though it provides that it can be modified only by a written agreement."). When all well-pleaded facts and allegations are reviewed in the light most favorably to the Plaintiff, this Court finds that the integration clause in the Written 2007 Agreement does not warrant dismissal of Plaintiff's claims. See Cent. Laborers' Pension Fund, 497 F.3d at 550. Indeed, by attaching Smartnet's CNATRA contract proposals which name Probado as the subcontractor to the Complaint, Plaintiff has provided more than sufficient evidence to "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555.

2.           **The Expiration Clause**

Defendant argues that even if the teaming agreement was valid, it expired on its own terms. (D.E. 28, pp. 13-14.) The Written 2007 Agreement includes an expiration clause that states the "duration of the agreement . . . shall remain in effect until . . . award of a prime contract to a party other than the Prime Contractor." (D.E. 23, Exh. 1, pp. 5-6.) Plaintiff argues that because Smartnet won the contract and no protests were successful, the expiration clause was never triggered. (D.E. 28, pp. 13-14.) Defendant argues that the contract did expire because the government contract was initially awarded to USI even though Smartnet eventually won the award after a protest. (D.E. 26, pp. 13-14.)

---

³ "Courts have allowed oral modification in spite of the parties' no oral modification clause, reasoning that the written agreement is of no higher legal degree than an oral one, and either may vary or discharge the other." Am. Garment Props., 155 S.W.3d at 435; Lone Star Steel Co. v. Scott, 759 S.W.2d 144, 153 (Tex. App. Texarkana 1988); Group Hosp. Srvcs., Inc. v. One and Two Brookriver Center, 704 S.W.2d 886, 890 (Tex. App. Dallas 1986); see also South Hampton Co. v. Stinnes Corp., 733 F.2d 1108, 1118 (5th Cir. 1984) ("Texas law permits a contract to be modified by subsequent oral agreement, notwithstanding the inclusion of a no-oral-modification clause, if the contract is not required by law to be in writing to be enforceable.") (citing Hyatt Creek Builders v. Board of Regents, 607 S.W.2d 258, 265 (Tex. Civ. App. 1980)).

The federal acquisition procedures allow parties to protest an initial award of a government contract if that protest is made shortly after the initial award. See 48 C.F.R. § 33.103. If the protest is successful, the government contract is not awarded to the party that initially won the contract. Here, it is clear that Smartnet won the prime contract. The Written 2007 Agreement states that the contract will terminate when there "is an award of the prime contract to another party." (D.E. 23, Exh 1.) Because USI never had an unchallengeable right to perform the CNATRA contract, it is unclear whether it can be considered the winner of the contract. Because all well-plead facts must weigh in favor of the Plaintiff, this Court finds that Plaintiff sufficiently alleges the expiration clause was not triggered. See Cent. Laborers' Pension Fund, 497 F.3d at 550.

Additionally, even if the expiration clause was triggered by the initial award of the contract to USI, Texas courts have extended expiration clauses when parties appear to continue performing under the contract. Intermedics, Inc. v. Grady, 683 S.W.2d 842, 846 (Tex. App. Houston 1st Dist. 1984) ("Even if an exact date of performance is specified in a contract, this provision can be waived by the parties.") (citing Highpoint of Montgomery Corp. v. Vail, 638 S.W.2d 624, 627 (Tex. App. Houston 1982.)); see ALCOA v. Hydrochem Indus. Servs., 2005 Tex. App. LEXIS 2010 (Tex. App. Corpus Christi Mar. 17, 2005) ("We conclude that the continued performance by both parties . . . impliedly extended the time for performance and all attending provisions."). The CNATRA contract proposals sent after USI's initial award continued to indicate that Probado would be the subcontractor if Smartnet eventually won the contract. (D.E. 23 at 6-7; D.E. 23, Exh. 4-6.) Thus, Smartnet's proposal is additional evidence that parties intended to continue to pursue the teaming agreement together.

### 3.  **Conditions Precedent**[4]

Defendant final attack on the contract claims is that Plaintiff fails to state a claim "[b]ecause the Teaming Agreement clearly provides for . . . conditions precedent and there are no specific allegations in the First Amended Complaint that all of these conditions were met." (D.E. 26, pp. 3-5.)  However, requiring plaintiff to plead "specific allegations" that all conditions are met is not required under the Federal Rules.  See Fed. R. Civ. Proc. 9(c); see also Sandhar v. Grewal, 2009 U.S. Dist. LEXIS 4622, *10 (S.D. Tex. Jan. 23, 2009) (finding that Rule 9(c) does not require specific pleading "that all conditions precedent to recovery have been met or performed").  Under Federal Rule of Civil Procedure 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. Proc. 9(c).  Only when denying that conditions precedent occurred does a party need to plead "with particularity."  Id.

Courts have found that simply alleging a contract is in force or that a party has performed its obligation under a contract is sufficient to satisfy the generally pleading requirements of Rule 9(c).[5]  See, e.g., Kiernan, 150 F.3d at 1124 (finding allegation that policy was "in 'full force and effect' [gave] adequate averment under the loose guidelines of Rule 9(c)"); Topping, 147 F.2d at 718 (finding Rule 9(c) satisfied where plaintiff alleges he has "performed all the terms and conditions"); Byczek, 264 F. Supp. 2d at 723 (finding pleading that party "fully performed its obligations under the agreement" sufficient for Fed. R. Civ. Proc. 9(c)).  In this case, not only

---

[4] Although the motion to dismiss cites Texas case law with regard to the pleading requirements for conditions precedent, this Court must apply Rule 9(c) of the Federal Rules of Civil Procedure.  See South Texas Nat'l Bank v. United States Fire Ins. Co., 640 F. Supp. 278, 281 (S.D. Tex. 1985) (finding that pleading requirements under Federal rule of Civil Procedure 9(c) does not modify substantive rights and therefore must apply to all cases brought in federal court).

[5] The Fifth Circuit has not interpreted the general pleading standard for conditions precedent under the Federal Rule of Civil Procedure 9(c).  However, courts from at least two other Circuits have addressed the issue and this Court refers to them as persuasive authorities.  See, e.g., Kiernan v. Zurich Cos., 150 F.3d 1120, 1124 (9th Cir. 1998); Topping v. Fry, 147 F.2d 715, 718 (7th Cir. 1945); Byczek v. Boelter Cos., 264 F. Supp. 2d 720, 723 (N.D. Ill. 2003).

does Plaintiff allege that it performed its obligations under the written and oral contracts, it also alleges that Smartnet was obligated to subcontract with Probado and Smartnet's failure to do so constituted a breach of the contract. (D.E. 23 p. 7 (stating that Smartnet "was obligated to subcontract a portion of the project work to Probado [and] Smartnet's failure constitutes a breach of contract.").) These general allegations are sufficient to show that conditions precedents have been met under Rule 9(c).

### C. Plaintiff Properly Alleges Promissory Estoppel

Plaintiff's Complaint makes an alternative claim for promissory estoppel in the event that there is no enforceable contract between Smartnet and Probado. (D.E. 23, pp. 9-10.) Defendant argues that the promissory estoppel claim should be dismissed because (1) equitable remedies are generally not available when there is a valid contract, and (2) the promises Plaintiff alleges relief for were mere unenforceable statements of hope. (D.E. 26, p. 10.) Promissory estoppel occurs when there is "(1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee." See Central Tex. Micrographics v. Leal, 908 S.W.2d 292, 298 (Tex. App. San Antonio 1995) (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)).

Defendant is correct that where there is a valid contract addressing the same matter, recovery under an equitable theory is generally inconsistent with the express agreement and cannot be enforced. See Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000). Even though this Court finds that the Plaintiff has sufficiently pled a valid and enforceable contract with Smartnet, it is unclear whether that agreement will still be considered valid and enforceable when all the evidence is gathered. If the evidence eventually shows that there is no

valid agreement, Plaintiff's should not be barred from bringing a promissory estoppel claim as an alternative theory of relief.

Plaintiff's Complaint sets forth all the required elements of a promissory estoppel claim. Probado alleges "a promise," namely that Smartnet promised Probado a subcontractor position if Probado helped Smartnet win a government contract. (D.E. 23, pp. 9-10 ("Smartnet promised Probado that if Probado agreed to work exclusively with Smartnet in pursuit of this government work, provide assistance in the preparation of the required proposals and allow Smartnet to use Probado's credentials in support of the proposal, Smartnet would subcontract technical and support work to Probado if a government contract was awarded.").) This promise, as alleged in Plaintiff's Complaint, does not appear to be "a mere statement of hope." See City of Beaumont v. Excavators & Contractors, Inc., 870 S.W.2d 123, 139 (Tex. App. Beaumont 1993) (finding that promissory estoppel requires a definite promise and not a mere "statement of hope"). It is a concrete promise of the type which courts have found enforceable in other cases: where one company promises to subcontract work to another company in exchange for help submitting a bid for a government contract. See Cable & Computer Tech., 214 F.3d at 1035 (finding promises "to be a team" with another party and "as a team submit a bid" for a government contract is an enforceable promise).

Probado also alleges "foreseeable reliance," namely that Probado relied on Smartnet's promise by expending resources to help draft the proposals and that Smartnet knew, or should have known, that Probado would rely on its promise to subcontract with Plaintiff. (Id. ("Probado relied on Smartnet's promise by working exclusively with Smartnet [and] Smartnet knew, or reasonably should have known, that Probado would rely, and did rely, on Smartnet's promise.").) Finally, Plaintiff's Complaint alleges "substantial detriment" from relying on Smarnet's promise

because it expended substantial amount of time, effort, and resources in pursuit of the government contract. (Id. ("Probado's reliance on Smartnet's promise resulted in injury to Probado including . . . the value of the time and effort extended by Probado personnel in the preparation of the different versions of the proposal, the preparation of materials and responsive information involved in the protest, and contribution toward the legal expenses incurred in pursuit of and in defense of the protests described above.").) These allegations are sufficient to plead a valid promissory estoppel claim. See English, 660 S.W.2d at 524; Central Tex. Micrographics, 908 S.W.2d at 298.

In sum, this Court finds that Plaintiff sufficiently pleads a breach of contract claim where parties agreed to enter into a teaming agreement to work together to bid on the August 28, 2007 RFQ for CNATRA. Alternatively, in the absence of an enforceable contract, Plaintiff sufficiently pleads a promissory estoppel claim seeking relief for Smartnet's alleged promise that it would subcontract with Plaintiff if it won the CNATRA contract.

### IV.    Conclusion

For the reasons stated herein, Defendant's 12(b)(6) Motion to Dismiss (D.E. 26) is DENIED.

SIGNED and ORDERED this 2nd day of June, 2010.

_____
Janis Graham Jack
United States District Judge