UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PROBADO TECHNOLOGIES CORPORATION, | § § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. C-09-349 |
| SMARTNET, INC., | § § § | |
| Defendant. | § § | |

# ORDER

On this day came on to be considered Defendant SMARTnet, Inc.'s ("SMARTnet") Motion for Summary Judgment. (D.E. 47.) Because more than twenty-one days have passed since Defendant filed its motion and Plaintiff Probado Technologies Corporation ("Probado") has not responded, Defendant's motion is deemed unopposed. S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling twenty-one days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). Although unopposed, the Court must consider the merits of Defendant's motion and is of the opinion that reasonable minds cannot differ and the motion should be GRANTED. See Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.").

### I. Jurisdiction

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff Probado, a Texas corporation with its principal place of business in Texas, and Defendant SMARTnet, a Delaware corporation with its principal place of business in Maryland. (D.E. 23, pp. 1-2.)

### II. Factual & Procedural Background

"In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party." See Goodman v. Harris County, 571 F.3d 388, 393 (5th Cir. 2009). "In the absence of counter documents to oppose the [movant's] affidavits, the facts attested must be deemed true and established." United States v. An Article of Drug Consisting of 4,680 Pails, 725 F.2d 976, 986 (5th Cir. 1984). The following facts are uncontroverted:

SMARTnet began its business relationship with Probado in August 2007 while both companies were working as subcontractors on a separate proposal. (D.E. 47, p. 3.) The companies worked together to respond to several Request for Proposals ("RFP"). The first RFP they responded to was a RFP dated August 15, 2007 involving work associated with the United States Government Defense Information Technology Contracting Organization ("DITCO") on behalf of the Chief of Naval Air Training Command ("CNATRA"). (D.E. 47, p. 3, Exh. 1.) SMARTnet sent Probado a standard teaming agreement to review and complete in case the parties won the RFP. (D.E. 47, Exh. 2.) However, Probado never returned the agreement and the RFP was awarded to Ultimate Solutions, Inc. ("USI"). (D.E. 47, p. 4, Exhs. 2, 3.)

CNATRA then issued additional RFPs for work related to Information Management ("IM") and Information Technology ("IT") with responses due on September 7, 2007. (D.E. 47,

Exhs. 4, 5.) On September 4, 2007, Probado forwarded a proposed teaming agreement for the IT RFP to SMARTnet. (D.E. 47, Exh. 7.) SMARTnet made changes to the agreement, signed it on September 11, 2010, and sent it back to Probado. (D.E. 47, Exh. 8.) The proposed agreement was missing terms and was never signed by Probado. (D.E. 47, Exh. 8.) The award for the IM and IT RFPs initially went to USI, but was subsequently canceled and, after major revisions of the RFP responses, was awarded to SMARTnet on June 23, 2008. (D.E. 47 p. 6-7, Exhs. 14-26.)

Right after being awarded the RFPs, SMARTnet sent Probado a proposed subcontract. (D.E. 47, Exhs. 27-28.) Probado returned the contract unsigned with a letter objecting to several material terms. (D.E. 47, Exh. 29.) On July 3, 2008, Probado sent a letter to the government protesting the IM and IT awards arguing that "as of today, a subcontract agreement between SMARTnet and Probado Technologies has not been consummated." (D.E. 47, Exh. 38.) After receiving this letter, the government suspended performance under the IM contract on July 3, 2010 and suspended performance under the IT contract on July 8, 2008. (D.E. 47, Exhs. 31, 32.) On August 27, 2008, the government abandoned the IT and IM RFPs, cancelled both contracts, and reduced the value of the contracts to zero. (D.E. 47 p. 7, Exh. 33, 38, 40.)

On October 8, 2008, DITCO issued a new Sole Source Award RFP (hereinafter "SSA RFP") for a scaled-down package of the IM work. (D.E. 47 p. 9, Exh. 34.) SMARTnet submitted a proposal listing itself as the prime contractor with no subcontractors referenced. (D.E. 47 p. 9, Exh. 35.) The award was issued to SMARTnet for a year and three month long project. (D.E. 47 p. 9, Exh. 36, 37.) Plaintiff brought this action on December 21, 2009 claiming SMARTnet breached a contract or, alternatively, relief under promissory estoppel. (D.E. 23, p. 2.) SMARTnet filed a motion for summary judgment on September 16, 2010

seeking to dismiss all of Plaintiff's claims.  (D.E. 47.)  Plaintiff Probado has not responded to that motion.

## III.  Discussion

### A.  Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law."  Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[O]nce the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial."  Bustos v. Martini Club, 2010 U.S. App. LEXIS 4739, *23 (5th Cir. 2010) (citing Celotex Corp., 477 U.S. at 322).

Federal Rule of Civil Procedure 56(e)(2) requires a party opposing a motion for summary judgment to "set out specific facts showing a genuine issue for trial."  "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment."  Doddy v. Oxy U.S.A., 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted).  "[W]hen evidence 'exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.'"  McElwee v. Wallantas, 2005 U.S. Dist.

LEXIS 38513, *5 (S.D. Tex. Dec. 12, 2005) (citing Smith v. United States, 391 F.3d 621, 625 (5th Cir. 2004)). "The nonmoving party must then 'go beyond the pleadings,' and by affidavits or other competent summary judgment evidence cite 'specific facts' that show there is a genuine issue for trial." Id. (citing Celotex Corp., 477 U.S. at 324).

If the non-movant fails to respond to the motion for summary judgment, "the facts attested [by movant's affidavits] must be deemed true and established." United States v. An Article of Drug Consisting of 4,680 Pails, 725 F.2d 976, 986 (5th Cir. 1984). "[F]ailure to respond to the summary judgment motion effectively waives [the non-movant's] opportunity to offer evidence or legal argument in opposition to summary judgment." Ervin v. Sprint Communs. Co. LP, 2010 U.S. App. LEXIS 2689, *2 (5th Cir. Feb. 9, 2010); see Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.").

However, "a district court may not grant a motion for summary judgment merely because it is unopposed." Id. (internal citations omitted); see also Resolution Trust Corp., 41 F.3d at 1022-23 (finding that failure to respond to plaintiff's motion for summary judgment "is an insufficient basis for a grant of summary judgment"); Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule.") (citing John v. La. Bd. of Trustees for State Colleges & Universities, 757 F.2d 698, 709 (5th Cir. 1985)). The movant still has the initial burden of "establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hibernia Nat'l Bank, 776 F.2d at

1279 (citing John, 757 F.2d at 708); see also Resolution Trust Corp., 41 F.3d at 1022-23 (finding that even if defendant does not respond to plaintiff's motion for summary judgment, the plaintiff "still must establish the absence of a genuine issue of material fact before it can prevail on a summary judgment motion"). Thus, summary judgment should only be granted "if no reasonable juror could find for the non-movant." Byers, 209 F.3d at 424 (citing Celotex Corp., 477 U.S. at 322).

### B. Elements of Contract Formation

"To recover for breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of defendant's breach." Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 72 (Tex. App. Houston 14th Dist. 2010). Under Texas law, a valid enforceable contract must have "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 72 (Tex. App. Houston 14th Dist. 2010).

For there to be a meeting of the minds, the Texas Supreme Court has found that "[t]he material terms of the contract must be agreed upon." T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). "Where an essential term is open for future negotiation, there is no binding contact." Id. Material terms include "contractual provision[s] dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." See, e.g., Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 74 (Tex. App. Houston 2010) (citing BLACK'S LAW DICTIONARY 1510 (8th ed. 2004)). "A purported

acceptance that changes or qualifies an offer's material terms constitutes a rejection and counteroffer rather than an acceptance." Id. at 72.

### C. Probado has No Contract Claim Against SMARTnet

#### 1. There is No Valid Contract

Plaintiff Probado alleges that SMARTnet and Probado "entered into a teaming agreement to pool their resources and pursue the acquisition of government contracts." (D.E. 23, p. 2.) While pursuing government contracts in September 2007, SMARTnet signed a proposed teaming agreement on September 11, 2007 and sent the proposal to Probado. (D.E. 23, Exh. 1; D.E. 47, Exh. 8.) The proposal was not signed by Probado and was missing several material terms, including the government contract parties wished to pursue, pricing, distribution of work, and hiring policies. (D.E. 23, Exh. 1.) Probado's alleges that even though the teaming agreement was missing key terms, parties had orally agreed upon all material terms and parties' actions showed that there was in fact an enforceable agreement. See Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex. App. Houston 2002) (finding implied contracts can be inferred from the acts and conduct of the parties when the facts and circumstances show a mutual intent to contract). Uncontested summary judgment evidence shows otherwise. Indeed, on July 3, 2008, Plaintiff Probado admitted it did not have a contract with SMARTnet, stating in a letter to the government that "a subcontract agreement between SMARTnet and Probado Technologies has not been consummated." (D.E. 47, Exh. 38.) For the reasons stated below, this Court finds that no reasonable jury could find that Probado and SMARTnet have entered into a valid teaming agreement.

On August 20, 2007, Defendant SMARTnet sent its first offer to Plaintiff Probado to work together on an RFP issued on August 15, 2007. (D.E. 47, Exh. 2.) No contract was

formed, however, because Plaintiff Probado never accepted Defendant's proposal. See Parker Drilling Co., 316 S.W.3d at 72 (finding a valid contract needs both an offer and acceptance). Indeed, evidence shows that Probado did not even reply to SMARTnet's offer. (D.E. 47, p. 4.) Eventually, the RFP for this project was awarded to another company, USI. (D.E. 47, Exh. 3.)

On September 2007, parties attempted to pursue another government contract by pursuing two RFPs. (D.E. 47, Exh 4.) On June 23 and 27, 2008, SMARTnet was informed that the government awarded it both RFPs. (D.E. 47, Exhs. 25, 26.) No contract was formed, however, because SMARTnet and Probado could not agree on the material terms of the contract. See Parker Drilling Co., 316 S.W.3d at 72. When SMARTnet sent Probado a proposed subcontract, Probado returned the contract unsigned with a letter objecting to several material terms. (D.E. 47, Exh. 29.) On July 3, 2008, Probado sent a letter to the government protesting the awards arguing that "as of today, a subcontract agreement between SMARTnet and Probado Technologies has not been consummated." (D.E. 47, Exh. 38.) Probado explained that parties had not yet agreed on hiring practices, pricing, or distribution of work. (D.E. 47, Exh. 38.) After receiving this letter, the government suspended performance under both contracts by July 8, 2008. (D.E. 47, Exhs. 31, 32.) On August 27, 2008, the government abandoned the IT and IM RFPs, cancelled both contracts, and reduced the value of the contracts to zero.[1]

Summary judgment evidence clearly shows that SMARTnet and Probado never entered into a valid contract. A valid contract requires an acceptance and a meeting of the minds were parties agree on all material terms. See T.O. Stanley Boot Co., Inc., 847 S.W.2d at 221. Plaintiff admitted to the government that parties disagreed on multiple material terms, including pricing,

---

[1] On October 8, 2008, the government issued another Sole Source Award RFP requesting proposals from contractors to perform IM work. (D.E. 47, Exh. 34.) SMARTnet submitted a proposal that made no mention of any subcontractor and SMARTnet was ultimately awarded the contract under this RFP. (D.E. 47, Exh. 35.) Probado does not claim that it was part of this specific agreement and there is no evidence showing that Probado was involved in pursuing the October 8, 2008 RFP.

distribution of workload, and hiring. (D.E. 47, Exh. 38.) Plaintiff even admitted that "a subcontract agreement between SMARTnet and Probado Technologies has not been consummated." (D.E. 47, Exh. 38.) There is no evidence of subsequent conduct that would lead a reasonable jury to conclude that parties resolved these differences. Because summary judgment evidence clearly shows parties did not come to an agreement as to material terms, this Court finds there is no enforceable teaming agreement between Probado and SMARTnet.[2]

### D. Plaintiff Cannot Recover Under Promissory Estoppel

Plaintiff's Complaint makes an alternative claim for promissory estoppel in the event that there is no enforceable contract between SMARTnet and Probado. (D.E. 23, pp. 9-10.) "The doctrine of promissory estoppel provides that when a party makes a promise and reasonably expects the promisee to rely on that promise by acting or refraining from acting in some manner, in order to avoid injustice, the promise is binding against the promisor." See EP Operating Co. v. MJC Energy Co., 883 S.W.2d 263, 268 (Tex. App. Corpus Christi 1994) (citing Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 938 (Tex. 1972)). As discussed below, this Court finds Plaintiff's promissory estoppel claim fails for three reasons.

First, a successful promissory estoppel claim must be based on "an actual promise." See Stable Energy, L.P. v. Kachina Oil & Gas, Inc., 52 S.W.3d 327, 336 (Tex. App. Austin 2001); see also Barfield v. Howard M. Smith Co., 426 S.W.2d 834, 838 (Tex. 1968). An actual promise

---

[2] Even if Probado, who failed to even reply to Defendant's Motion for Summary Judgment, could present evidence of an implied teaming agreement, such an agreement would be void under its own terms. This is because the September 11, 2007 teaming agreement Probado claims formalized the parties relationship has a duration clause which states the agreement will terminate upon "cancellation of the Program, or retraction of the RFP," "award of a prime contract to a party other than the Prime Contractor," or "the elapse of 24 months from the effective date of this Agreement …" (D.E. 23, Exh. 1.) When a contract term is unambiguous, a court must enforce that term as expressed. See Dallas Power & Light Co. v. Cleghorn, 623 S.W.2d 310-311 (Tex. 1981). Each of the potential contracts Probado could claim that it had a right to perform under a teaming agreement with SMARTnet would have been terminated pursuant to Article VII of the teaming agreement. Summary judgment evidence unequivocally shows that the first RFP was awarded to another party, the second and third RFPs were suspended and then cancelled with a value reduced to zero, and the fourth RFP was awarded more than a year after parties entered into the teaming agreement. (D.E. 47, Exhs. 3, 31, 32, 34, 38, 40.) Thus, this Court finds that even if Plaintiff could show a valid teaming agreement exists, that agreement would be void on its own terms.

cannot be a conditional offer open to future negotiations, but rather must be a representation the plaintiff can rely upon. Highgate Prods., L.L.C. v. Louis Printing Servs., Ltd., 2002 Tex. App. LEXIS 7665 (Tex. App. Dallas Oct. 28, 2002). There is no evidence that Probado ever unconditionally promised SMARTnet anything. Indeed, the evidence shows that SMARTnet only gave Probado an offer to team together, which was conditional on Probado's acceptance. (D.E. 47; Exhs. 33 (email from SMARTnet to Probado requesting that Probado's "signed acceptances, must be provided by the Close of Business on July 10, 2008").) There was no "actual promise," which is essential for any promissory estoppel.

Second, there is no evidence of reliance. In fact, Probado's outright rejection of SMARTnet's offers to team together shows that it refused to rely on SMARTnet's representations. (D.E. 47, Exh. 38.) Substantial reliance is an essential element of a promissory estoppel claim. See "Moore" Burger, Inc. v. Phillips Pet Co., 492 S.W.2d 934, 937-38 (Tex. 1972); Ford v. City State Bank, 44 S.W.2d 121, 139 (Tex. App. Corpus Christi 2001).

Finally, Probado cannot show detriment because neither party performed or was paid under the contracts Probado and SMARTnet pursued together. See EP Operating Co., 883 S.W.2d 263. The August 15, 2007 contract was awarded to another party and the June 2008 contracts were cancelled with a value reduced to zero. (D.E. 47, Exhs. 3, 33, 38, 40.) Because summary judgment evidence clearly shows that Probado never detrimentally relied on a promise from SMARTnet, no reasonable juror could conclude that Probado is entitled to promissory estoppel.

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (D.E. 47) is GRANTED.

SIGNED and ORDERED this 8th day of November, 2010.

_____
Janis Graham Jack
United States District Judge